IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| IN THE MATTER OF:<br><br>Specialty Shops Holding Corp., *et al.*,[1]<br><br>Debtors. | 8:19CV405<br><br>MEMORANDUM<br>AND ORDER |

      This matter is before the Court on creditor McKesson Corporation's ("McKesson") appeal (Filing No. 1) from a decision of the United States Bankruptcy Court for the District of Nebraska ("Bankruptcy Court") denying McKesson's Request for Payment of Administrative Claim (Filing No. 22, at 263).[2] With jurisdiction under 28 U.S.C. § 158, this Court finds the Bankruptcy Court's decision should be affirmed for the reasons stated below.

**I.    BACKGROUND**[3]

      Shopko (which collectively refers to all the debtors) once operated over 300 general merchandise stores throughout the country with over 230 pharmacy locations. McKesson,

---

    [1]According to the parties and notice of appeal (Filing No. 1), the debtors in this case are Specialty Retail Shops Holding Corp.; Pamida Store Operating Co., LLC; Pamida Transportation LLC; Penn-Daniels, LLC; Place's Associates' Expansion, LLC; Retained R/E SPE, LLC; Shopko Finance, LLC; Shopko Gift Card Co., LLC; Shopko Holding Company, LLC; Shopko International Care Services Co., LLC; Shopko Optical Manufacturing, LLC; Shopko Properties, LLC; Shopko Stores Operating Co., LLC; SVS Trucking, LLC (collectively, "Shopko").

    [2]The Bankruptcy Court identified the creditors as McKesson Biologics and Plasma, LLC and McKesson Corporation, Inc. The creditors only identify themselves as McKesson Corporation.

    [3]Unless otherwise indicated, these facts are undisputed. The Court reviews the Bankruptcy Court's fact findings for clear error. *See First State Bank of Roscoe v. Stabler*, 914 F.3d 1129, 1136 (8th Cir. 2019).

a pharmaceutical supplier, supplied virtually all of Shopko's pharmaceutical inventory ("pharmaceutical goods").

In December 2018 (presumably in anticipation of Shopko's impending bankruptcy and apparently after relations between the parties deteriorated), McKesson issued Shopko a reclamation demand for Shopko to return the pharmaceutical goods and sued Shopko in state court seeking the same. "Reclamation is the right of a seller to recover possession of goods delivered to an insolvent buyer" and, at the common law, was based on a theory "the seller had been defrauded." *In re Pester Ref. Co.*, 964 F.2d 842, 844 (8th Cir. 1992). In the bankruptcy context, 11 U.S.C. § 546(c) governs reclamation claims and recognizes reclamation rights under applicable state law. *See In re Arlco*, 239 B.R. 261, 266 (Bankr. S.D.N.Y. 1999). The parties do not dispute that McKesson complied with applicable state law in making a timely reclamation demand.

Before the state court could resolve McKesson's reclamation demand, on January 16, 2019 ("petition date"), Shopko filed a voluntary Chapter 11 bankruptcy petition, *see* 11 U.S.C. § 1101 *et seq.*, and continued to operate its business as debtors-in-possession, *see id.* §§ 1107(a) and 1108. As of the petition date, Shopko had outstanding debt of over $400 million to its lenders ("Lenders"). Those debts were secured by, among other things, the pharmaceutical goods McKesson supplied.

### A. Post-Petition Motions and Actions

On the petition date, Shopko filed numerous motions seeking, among other things, post-petition financing from its Lenders and authorization to sell the pharmaceutical goods. McKesson objected to those requests, asserting they would impair its reclamation and marshaling rights to the pharmaceutical goods.

On January 25, 2019, Shopko and McKesson entered into a Stipulation and Settlement Agreement ("Settlement Agreement"), which the Bankruptcy Court approved. Under the Settlement Agreement, McKesson withdrew its objections to Shopko's post-

2

petition financing arrangement and to the sale of the pharmaceutical goods. In return, the parties agreed McKesson would retain any reclamation and marshaling rights to the pharmaceutical goods, subject to the Lenders' superior rights. The parties further agreed that if the Bankruptcy Court determined McKesson had valid and enforceable reclamation and marshaling rights as of the petition date (and the Lenders were paid in full), McKesson would be entitled to a superpriority administrative claim under 11 U.S.C. § 507(b).[4]

With McKesson's objections withdrawn, on January 29, 2019, the Bankruptcy Court authorized (Filing No. 22, at 155) the sale of the pharmaceutical goods ("Pharmacy Sale Order") and directed Shopko to pay the proceeds ("pharmaceutical proceeds") from that sale to the Lenders. On February 14, 2019, the Bankruptcy Court approved (Filing No. 22, at 191) Shopko's post-petition financing from the Lenders ("Post-Petition Financing Order"). Shopko sold most of the pharmaceutical goods and returned any unsold goods to McKesson by March 1, 2019.

On March 15, 2019, McKesson filed a proof of claim (Filing No. 22, at 472) asserting Shopko owed them a total of $70,561,775.90 as of the petition date for (1) an administrative claim under 11 U.S.C. § 503(b)(9)[5] in the amount of $1,973,887.80 for goods McKesson delivered Shopko in the twenty days before the petition date; (2) a reclamation claim in the amount of $36,190,535.08 for goods McKesson delivered Shopko in the forty-five days before the petition date, minus the amount of the § 503(b)(9) claim; and (3) a general unsecured claim in the amount of $32,397,353.17 for goods McKesson

---

[4]A superpriority administrative claim has higher priority than all other administrative claims and general unsecured claims. *Superpriority*, Black's Law Dictionary (11th ed. 2019).

[5]Section 503(b)(9) allows an administrative claim for the value of goods a debtor receives twenty days before commencing a bankruptcy case. Generally, an administrative claim has the highest priority after secured and superpriority claims.

delivered Shopko more than forty-five days before the petition date. This appeal deals only with the reclamation claim in the amount of $36,190,535.08.

On March 29, 2019, McKesson filed its Request for Payment of Administrative Claim seeking a superpriority administrative claim under § 507(b) for the $36,190,535.08 pursuant to the Settlement Agreement. Shopko resisted the request and the parties entered into a Scheduling Stipulation (Filing No. 22, at 268) for resolving the issue. The parties agreed (1) the Bankruptcy Court would hold an initial hearing to address "the legal issues relevant to McKesson's entitlement to assert and receive an allowed administrative claim and necessary facts thereto" and (2) then, "[i]f the [Bankruptcy] Court determine[d] McKesson is entitled to assert and receive an allowed administrative claim," the parties would meet "to agree on a further schedule for discovery and an evidentiary hearing for the adjudication of any factual issues requiring resolution with respect to McKesson's administrative claim."

### B. The Bankruptcy Court's Decision and Issues on Appeal

This matter never reached the second step under the Scheduling Stipulation. After the initial hearing, the Bankruptcy Court denied McKesson's request. The Bankruptcy Court rejected both McKesson's request for (1) a superpriority administrative claim under § 507(b) pursuant to the Settlement Agreement and (2) any other administrative claim independent of the Settlement Agreement. McKesson, no longer seeking the former, now appeals only the Bankruptcy Court's rejection of the latter.

McKesson's briefing is voluminous and full of tangential, overreaching arguments. But, at root, McKesson asserts the Bankruptcy Court erred because McKesson is entitled to an administrative claim under (1) § 546(c) and based on its reclamation rights; (2) the Pharmacy Sale Order's protection of McKesson's interests in the pharmaceutical goods and proceeds; and (3) 11 U.S.C. § 503(b)(1)(A) because Shopko used the pharmaceutical proceeds to fund post-petition operations. McKesson further faults the Bankruptcy Court for not following the Scheduling Stipulation.

## II. DISCUSSION

### A. Standard of Review and Jurisdiction

The Court reviews the Bankruptcy Court's findings of fact for clear error and conclusions of law de novo. *See Stabler*, 914 F.3d at 1136. The Court has jurisdiction to hear appeals from final orders of the Bankruptcy Court where a party timely elects to have the appeal heard by this Court.[6] *See* 28 U.S.C. § 158(a)(1) and (c)(1)(A).

### B. An Administrative Claim Based on Reclamation Rights

McKesson argues it is entitled to an administrative claim by virtue of its reclamation rights for two reasons. First, McKesson contends it is entitled to an administrative claim consistent with the historical approach "of awarding administrative priority claims to reclaiming sellers" where the goods are no longer available to be reclaimed. Second, McKesson asserts it is entitled to an administrative claim under § 546(c) because McKesson alleges the Lenders released their interests in the pharmaceutical goods and proceeds and the Bankruptcy Court erred in assuming otherwise.

As noted above, § 546(c) governs reclamation claims in bankruptcy cases.[7] The current version of § 546(c) provides

> [S]ubject to the prior rights of a holder of a security interest in such goods or the proceeds thereof, the rights and powers of the trustee under sections 544(a), 545, 547, and 549 are subject to the right of a seller of goods that has sold goods to the debtor, in the ordinary course of such seller's business, to reclaim such goods if the debtor has received such goods while insolvent, within 45 days before the date of the commencement of a case under this title, but such seller may not reclaim such goods unless such seller demands in writing reclamation of such goods [within certain timeframes.]

---

[6]Here, the Court referred the question of whether McKesson's election was valid to the Bankruptcy Appellate Panel for the Eighth Circuit ("BAP"), *see* 8th Cir. BAP L.R. 8005A(a)(2) (instructing "the clerk to refer the question [of the validity of an election] to a panel"). The BAP determined it was (Filing No. 35).

[7]Again, the underlying success of a reclamation claim is dictated by state law but there is no dispute here McKesson met the applicable state-law requirements.

> . . . .
>
> If a seller of goods fails to provide [adequate] notice . . . the seller still may assert the rights contained in section 503(b)(9).

A party seeking a reclamation claim (or an administrative claim) must establish its rights to such a claim by a preponderance of the evidence. *See In re Adventist Living Ctrs., Inc.*, 52 F.3d 159, 162 (7th Cir. 1995); *see also In re Bridge Info Sys., Inc.*, 288 B.R. 133, 137-38 (B.R. Mo. 2001) ("A party seeking a priority administrative claim has the burden of proving by a preponderance of the evidence that it has the right to such a claim.").

The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), 11 U.S.C. § 101 *et seq.*, made several important changes to § 546(c) relevant here. Before the BAPCPA, § 546(c) "contained a provision for granting [the seller] a priority administrative expense claim or a lien if the Court denied" a valid reclamation claim. *In re Prof'l Veterinary Prods., Ltd.*, 454 B.R. 479, 483 (B.R. Neb. 2011). Although the BAPCPA "removed those protections for the" seller, the trade-off was that it "extended from 10 to 45 days, the pre-petition delivery window covered by the statute, and established the [seller's] ability to claim an administrative expense claim under § 503(b)(9) even if the [seller] did not make a proper reclamation demand." *Id.* The BAPCPA also amended § 546(c) to make clear that a reclaiming seller's rights are "subject to the prior rights of a holder of a security interest in such goods or proceeds thereof." 11 U.S.C. § 546(c).

### 1. Historical Treatment of Reclamation Claims

McKesson asserts courts have historically awarded administrative claims in lieu of returning a reclaiming seller's goods where the goods are no longer available to be reclaimed and that the Bankruptcy Court erred in deviating from that historical approach. The Bankruptcy Court rejected that argument based on the BAPCPA amendments to § 546(c). The Bankruptcy Court's conclusion was well-founded.

McKesson contends the Bankruptcy Court ignored a "century-long unbroken history of awarding" an administrative claim where a seller asserts a valid reclamation

6

claim but the goods are no longer available. The BAPCPA, however, alters—if not breaks—that history.

Pre-BAPCPA, § 546(c) provided a court "may deny reclamation to a seller" with a reclamation right "only if the court" grants an administrative claim or secures the claim by a lien. 11 U.S.C. § 546(c)(2) (1998). Unsurprisingly, then, courts historically awarded an administrative claim or lien when denying a valid reclamation claim. But as the Bankruptcy Court stated, "there is nothing in the language of the [current] statute to indicate that it was intended to create an administrative claim for reclaiming sellers, other than through the reference to § 503(b)(9)."[8]

Despite conceding the BAPCPA removed the provision for an administrative claim or lien if the Court denied reclamation, McKesson insists the BAPCPA was not written on a clean slate. *See Dewsnup v. Timm*, 502 U.S. 410, 417, 419 n.4 (1992) ("When Congress amends the bankruptcy laws, it does not write 'on a clean slate.'" (quoting *In re John M. Russell, Inc.*, 318 U.S. 515, 521 (1943))). With that, McKesson argues that because the current version of § 546(c) does not expressly *prohibit* an administrative claim in place of reclamation, the Bankruptcy Court erred in denying one. The Court disagrees.

The plain, post-BAPCPA language in § 546(c) makes clear it requires no such claim. *See Doe v. Dep't of Veterans Affairs*, 519 F.3d 456, 461 (8th Cir. 2008) ("If the plain language of the statute is unambiguous it controls."). The alternative "remedies in the earlier version of the statute . . . are gone." *In re hhgregg*, 949 F.3d 1039, 1047 (7th Cir. 2020). And McKesson has not shown that the Bankruptcy Court nonetheless erred by not exercising some discretion to offer one (even assuming that discretion exists). *See, e.g.*, *Prof'l Veterinary*, 454 B.R. at 484 (finding that "[u]nder § 546(c) as it now stands, there is no authority for the court to unilaterally extend a seller's rights to assets other than the actual goods"). The Court agrees with the Bankruptcy Court that BAPCPA

---

[8]McKesson has already received the benefit of an administrative claim under § 503(b)(9).

amendments to § 546(c) "radically alter[ed] how reclamation claims are treated in bankruptcy" and do not maintain the alternative remedy of an administrative claim for reclaiming sellers. Accordingly, the Bankruptcy Court did not err in denying McKesson's request for an administrative claim based on the historical treatment of reclaiming sellers before the BAPCPA.

### 2. The Proceeds

McKesson next contends it has a valid reclamation claim under § 546(c) that entitles it to an administrative claim to the pharmaceutical proceeds.

McKesson acknowledges that any reclamation rights it has are subordinate to the "prior rights of a holder of a security interest." 11 U.S.C. § 546(c); *see also hhgregg*, 949 F.3d at 1048 ("What this means as a practical matter is that 'if the value of any given reclaiming supplier's goods does not exceed the amount of debt secured by the prior lien, that reclamation claim is valueless.'" (quoting *In re Dana Corp.*, 367 B.R. 409, 419 (Bankr. S.D.N.Y. 2007)). But McKesson argues the Lenders' superior interests do not bar McKesson's claim. According to McKesson, the record shows either the Lenders released their interests in the pharmaceutical proceeds or this case should be remanded to the Bankruptcy Court to further develop the record on whether the Lenders did so.

In support, McKesson primarily relies on *Pester*, 964 F.2d 842, a pre-BAPCPA Eighth Circuit case. In *Pester*, sellers sought to reclaim chemicals from a debtor. *Id.* at 846. The debtor owed its lenders over $42,000,000, secured (in part) by those chemicals. *Id.* But, after the chemicals were sold, those lenders "elected to release their secured interests in the chemicals" and their proceeds. *Id.*

Under those circumstances, where the "secured creditor released its security interest in the goods" and there were "*traceable* proceeds available to reclaim," the Eighth Circuit found the "alternative remedies in [the pre-BAPCPA] § 546(c)(2) provide[d] needed flexibility" to allow the seller to receive either an administrative claim or a lien to the excess

proceeds. *Id.* at 847 (emphasis added). But the Eighth Circuit again cautioned if "an undersecured secured creditor foreclose[d] on the goods to be reclaimed and use[d] the entire proceeds to pay down its secured debt, the seller's reclamation right" would be valueless. *Id.*

As the Bankruptcy Court pointed out, *Pester* ("based on a unique set of facts and an older version of the statute") is no help to McKesson because the Lenders in this case did not release their interests in the pharmaceutical goods or proceeds, there are no excess proceeds, and McKesson has identified no reason to remand for additional factfinding.

First, even if the Court were to assume McKesson had a valid reclamation claim unimpeded by the Lenders' superior rights, that claim, under the current version of § 546(c), does not entitle it to an administrative claim for the same reasons noted above. *Pester* contemplated relief for a reclaiming seller by applying the pre-BAPCPA alternative remedies of an administrative claim or lien—those alternative remedies no longer exist and § 546(c) does not otherwise entitle McKesson to an administrative claim other than the one it already received under § 503(b)(9).[9]

But regardless of that hurdle, McKesson still falls short on its burden to establish a valid reclamation claim because it has not identified any traceable proceeds of the pharmaceutical goods.

McKesson contends budget projections (Filing No. 22, at 190) that Shopko submitted to the Bankruptcy Court in the first few months of the bankruptcy proceedings show "proceeds of some or all of the [pharmaceutical goods] were

---

[9]As noted by Shopko, it is also questionable whether McKesson's reclamation rights extend to proceeds under the current version of § 546(c). *See, e.g.*, *In re Circuit City Stores, Inc.*, 441 B.R. 496, 511 (B.R. E.D. Va. 2010) (noting the plain language of § 546(c) grants reclaiming sellers the right to reclaim only the goods). The Eighth Circuit contemplated proceeds in *Pester*, but in the context of the pre-BAPCPA alternative remedies which no longer exist. The Court need not decide that issue, however, because McKesson has not shown a valid reclamation claim.

undoubtedly . . . expended by Debtors to fund operations and pay the professionals . . . as opposed to paying the Lenders." The budget projections reflect Shopko anticipated approximately $531 million in total receipts, with around $481 million from general sales receipts and $50 million from the sale of the pharmaceutical goods. Looking to the non-operating disbursements under the budget projections, McKesson contends "Shopko [was] authorized to use over $300 million of the Lenders' cash collateral in the operation of the business." In other words, McKesson asserts these budget projections mean "over $300 million of the proceeds of Pharmacy Assets and receipts from the sale of other goods [would] not [be] paid to the Lenders."[10]

In McKesson's view, if the Lenders allowed Shopko to use the pharmaceutical proceeds for operating costs, the Lenders must have released their interests in those proceeds. In that case, McKesson asserts that it maintains a valid reclamation claim like the seller in *Pester*. At a minimum, McKesson contends the Bankruptcy Court erred by erroneously assuming Shopko used all the pharmaceutical proceeds to pay the Lenders. McKesson therefore requests this Court at a minimum remand the case to resolve that fact question. On careful review of the record, the Court is not persuaded by McKesson's argument.

McKesson faults Shopko for failing to produce evidence that the pharmaceutical proceeds went to the Lenders. But as noted above, McKesson (not Shopko) bears the burden of showing it is entitled to a reclamation claim or administrative claim—which McKesson should have done during the bankruptcy proceedings. *See, e.g.*, *In re Weise Sec., Inc.*, 542 F.2d 840, 843 (2d Cir. 1976) (quoting 4A Collier on Bankruptcy ¶ 70.39(c), at 476-77 (14th ed. 1976)).

In *Pester*, the Eighth Circuit required "traceable proceeds" be "available to reclaim" for a seller to seek relief under the pre-BAPCPA alternative remedies under § 546(c)(2).

---

[10]McKesson does acknowledge that, according to the budgets, "approximately $217 million was allocated to pay down [Shopko's] obligation to the Lenders."

964 F.2d at 847.  Here, the only evidence McKesson has produced to support its theory that the Lenders released their interests in the pharmaceutical proceeds and to trace those proceeds is the early budget projections which anticipated Shopko would make over $300 million in disbursements.  McKesson has not directed this Court (and did not direct the Bankruptcy Court) to any evidence showing if, when, or how any of those projected disbursements were actually made.  And even assuming Shopko made the projected $300 million in disbursements, McKesson has not identified the source of the money making up those disbursements which could be entirely from the $481 million in sales receipts independent of the $50 million in pharmaceutical proceeds. Put another way, even if the Lenders did authorize Shopko to use cash collateral, McKesson has not shown any came from the pharmaceutical goods and proceeds.

In contrast, the Bankruptcy Court's conclusion that the Lenders did not release their interests in the proceeds is fully supported by the record in this case.  As both the Bankruptcy Court and Shopko have pointed out, the amount Shopko owed its Lenders greatly exceeded the value of the pharmaceutical goods.  And the Pharmacy Sale Order required Shopko to use all the pharmaceutical proceeds to pay its obligations to the Lenders.  McKesson has produced no evidence that Shopko did not follow that order.

Under these circumstances, McKesson has not met its burden to show the Lenders ever released their interests in the pharmaceutical proceeds.  Nor has McKesson traced the specific proceeds of the pharmaceutical goods or shown they are traceable. *See Pester*, 964 F.2d at 847; *see also In re Bridge Info. Sys., Inc.*, 288 B.R. 133, 138-39 (B.R. Mo. 2001) (finding even if a reclaiming seller could show a secured creditor was oversecured that seller did not produce evidence it could trace the proceeds from the goods); *In re Buyer's Club Markets, Inc.*, 100 B.R. 37, 38 (B.R. Co. 1989) (noting a reclaiming seller failed to show it traced or could trace proceeds); *Arlco*, 239 B.R. at 275-76 (recognizing a reclaiming seller is only entitled to proceeds traceable by the court).  Any factual

conclusions contained in the Bankruptcy Court's findings were not clearly erroneous, and the Bankruptcy Court's decision was otherwise sound.[11]

Finally, McKesson's contention the Bankruptcy Court failed to follow the Scheduling Stipulation by determining the Lenders did not release their interests after the first hearing is meritless. The Scheduling Stipulation clearly stated that at the first hearing, the Bankruptcy Court would consider McKesson's entitlement to an administrative claim "and necessary facts thereto." The disposition of the pharmaceutical proceeds is certainly a "necessary fact[]." The Scheduling Stipulation only required a second phase with discovery and further evidence if the Bankruptcy Court determined McKesson was entitled to assert an administrative claim which, for all the reasons stated above, it was not.

### C. An Administrative Claim based on the Pharmacy Sale Order

McKesson next relies on *Professional Veterinary*, 454 B.R. 479, to argue it is entitled to an administrative claim under the Pharmacy Sale Order, which provides McKesson's reclamation rights could attach to the pharmaceutical proceeds.

In *Professional Veterinary*, a seller sold veterinary medicine to a debtor and then asserted a reclamation claim. *Id.* at 481. The debtor sold the medicine with at least some of the proceeds going to its senior lender. *Id.* In a sale order, the bankruptcy court

---

[11]For the first time to this Court in its reply brief, McKesson suggests Shopko may not argue this case because "any rights of the Lenders under § 546(c) are exclusively those of the Lenders," relying on a case in which creditors did not object to a reclaiming seller's claim. *See In re Georgetown Steel Co.*, 318 B.R. 340, 348-49 (B.R. S.C. 2004). Putting aside the impropriety of raising this issue for the first time in its reply, *see Navarijo-Barrios v. Ashcroft*, 322 F.3d 531, 564 n.1 (8th Cir. 2003) ("It is well settled that we do not consider arguments raised for the first time in a reply brief."), McKesson's argument is meritless. First, the Bankruptcy Court concluded the Lenders were already paid from the pharmaceutical proceeds, so there would be no reason for the Lenders to object. Second, McKesson argues, at least in part, it should be awarded an administrative claim regardless of the Lenders' interests based on the historical treatment of reclamation rights. Under those circumstances, any administrative claim would attach to proceeds beyond those from the pharmaceutical goods, in which these debtors-in-possession have an interest.

confirmed the sale but provided all interests in the medicine "attach[ed] to the net proceeds of the Sale in the order of their priority." *Id.* at 481-82. The seller requested "the turnover and an accounting of any proceeds from the sale" or a lien or administrative expense claim for the value of the medicine. *Id.* The debtor moved for summary judgment against the seller's claim, which the bankruptcy court denied. *Id.*

The *Professional Veterinary* bankruptcy court found that while the post-BAPCPA version of § 546(c) does not provide for a lien or administrative claim, the sale order preserved the seller's "interests" in the medicine broadly enough to "allow[] th[e] possibility" of providing for a lien on the proceeds. *Id.* at 486. The bankruptcy court noted it would still have to determine the validity of the seller's reclamation claim and whether any prior secured interests would take priority, but the bankruptcy court concluded the seller "should not be foreclosed at this point in the proceedings from attempting" to make those showings. *Id.*

Here, like in *Professional Veterinary*, the Pharmacy Sale Order provides "all Interests" in the pharmaceutical goods "attach to net proceeds of the [sale], in the same amount and order of their priority." Exhibit B to the Pharmacy Sale Order lists McKesson's "[a]lleged reclamation claim" as an interest. Accordingly, McKesson argues it is "entitled to something more than a general unsecured claim."

The Bankruptcy Court, however, rejected McKesson's argument under *Professional Veterinary* for largely the same reason as under *Pester*—McKesson has shown no traceable excess proceeds exist for McKesson's interests to attach to under the Pharmacy Sale Order. For the same reasons noted above, the Court concludes that finding is correct.

Moreover, even if McKesson could show traceable excess proceeds exist (or that the Bankruptcy Court somehow erred in not allowing discovery to establish them), the bankruptcy court in *Professional Veterinary* did not award the relief McKesson is now requesting—an administrative claim. The bankruptcy court in *Professional Veterinary*

13

instead declined to decide the issue at that point but held the seller should not be barred from seeking a lien on the proceeds. As noted by Shopko, that case "would, at best, entitle [McKesson] only to a lien-like remedy on the proceeds of the goods" and "a lien on a particular asset is not the same as an administrative claim (under § 546(c) or otherwise)."

### D. An Administrative Expense Claim based on Section 503(b)(1)(A)

Finally, McKesson asserts the Bankruptcy Court erred in denying it an administrative claim under § 503(b)(1)(A) which grants an administrative expense claim for "the actual, necessary costs and expenses of preserving the estate." That "statutory provision grants priority status to certain necessary expenses incurred *after* the filing of a bankruptcy petition that benefits the bankruptcy estate." *In re Whistler Energy II, LLC*, 931 F.3d 432, 440 (5th Cir. 2019) (emphasis added).

As a general rule, to qualify for an administrative expense claim under § 503(b), the expense must (1) confer "an actual and demonstrable benefit [on] the debtor's estate, the creditors, and to the extent relevant, the stockholders," and (2) "arise from a transaction with a bankruptcy estate." *Sanchez v. Nw. Airlines, Inc.*, 659 F.3d 671, 677 (8th Cir. 2011) (alterations in original) (quoting *In re Flight Transp. Corp. Secs. Litig.*, 874 F.2d 576, 851-82 (8th Cir. 1989)). The requirement that an expense arise from a post-petition transaction with the bankruptcy estate is "closely tied to the purpose of section 503(b)(1)(A)," that is, to avoid the business problem of third parties refusing to extend credit to trustees or debtors-in-possession "for fear that their claims would not be paid." *In re Whistler*, 931 F.3d at 441-42. Because that "incentive is not required . . . when the relevant obligation pre-dates the bankruptcy," a claim under § 503(b) cannot arise from a transaction with a pre-petition debtor. *Id.*

Here, the Bankruptcy Court found McKesson is not entitled to an administrative claim under § 503(b) because it did not engage in any post-petition transactions with Shopko. McKesson concedes that point but contends "to the extent the proceeds of the Reclamation Goods were used to fund [Shopko's] operations and reorganization costs,

14

fundamental fairness requires that McKesson be allowed an administrative claim" under § 503(b). McKesson argues that conclusion is necessary because Shopko allegedly acquired the pharmaceutical goods through fraud and then failed to return those goods. McKesson claims the Supreme Court's decision in *Reading Co. v. Brown*, 391 U.S. 471, 483 (1968), supports its position.

In *Reading*, "the Supreme Court held *post-petition tort claims*—specifically, ones arising from the negligence of a trustee acting within the scope of his authority—are 'costs ordinarily incident to operation of a business,' and therefore qualify as administrative expenses entitled to priority under § 503(b)." *Sanchez*, 659 F.3d at 677 (quoting *Reading*, 391 U.S. at 483-85) (emphasis added). Again, McKesson's reliance is misplaced.

*Reading* involved *post-petition* torts. Although McKesson would like to expand *Reading* based on its perceived post-petition injury from an alleged *pre-petition* fraud, this Court agrees with the Bankruptcy Court that McKesson's reclamation claims "resulting from the pre-petition delivery of goods on credit do not morph into valuable post-petition administrative priority claims simply because the goods were sold." *See also Sanchez*, 659 F.3d at 678-79; *United States v. Dewey Freight Sys., Inc.*, 31 F.3d 620, 624 n.4 (8th Cir. 1994) (finding a seller was not entitled to an administrative expense claim under § 503(b)(1) because nothing in the record suggested any post-petition actions such as negotiating new, post-petition contracts with the debtor). As noted by Shopko, this conclusion is necessary because "otherwise, a seller seeking reclamation could virtually always obtain a § 503(b)(1)(A) administrative claim, creating gaping holes . . . in the 'limited' *Reading* exception" and the general rule that priority statutes must be narrowly construed. *See Flight Transp.*, 874 F.2d at 851.

15

Based on the foregoing,

IT IS ORDERED:

1. The decision of the Bankruptcy Court (Filing No. 1) denying creditor McKesson Corporation's Request for Payment of Administrative Claim (Filing No. 22, at 263) is affirmed.
2. A separate judgment will issue.

Dated this 24th day of July 2020.

                BY THE COURT:

                *Robert F. Rossiter, Jr.*
                Robert F. Rossiter, Jr.
                United States District Judge